**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FUJIFILM CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:24-cv-04017 |
| | ) |
| EASTMAN KODAK COMPANY, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff FUJIFILM Corporation ("Plaintiff" or "FUJIFILM") files this Complaint for patent infringement and demand for jury trial against Defendant Eastman Kodak Company, ("Defendant" or "Kodak"), and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") against Defendant, pursuant to 35 U.S.C. § 271, for infringement of U.S. Patent Nos. 10,427,443 ("the '443 Patent"), 10,525,696 ("the '696 Patent"), 10,875,346 ("the '346 Patent"), and 11,294,279 ("the '279 Patent") (collectively the "patents-in-suit"), which are attached as Exhibits 1–4, respectively, and incorporated herein by reference, and to seek injunctive relief and recover damages, attorneys' fees, and costs.

**THE PARTIES**

2.      Plaintiff FUJIFILM is a corporation organized under the laws of Japan, with its principal place of business located at 7-3, Akasaka 9-chome, Minato-ku, Tokyo 107-0052, Japan.

3.    Upon information and belief, Defendant Kodak is a company incorporated under the laws of the State of New Jersey, and maintains a principal place of business at 343 State St., Rochester, New York, 14650.

## JURISDICTION AND VENUE

4.    This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq*. This Court's jurisdiction over this action is proper under relevant statutes, including 35 U.S.C. § 271, *et seq*., 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338 (jurisdiction over patent actions).

5.    This Court has general personal jurisdiction over Defendant at least because Defendant is incorporated in New Jersey.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).

## FACTUAL ALLEGATIONS

7.    FUJIFILM is a multinational innovator in a multitude of fields, and for nearly a century has been a world leader in photography, optics, biotechnology and chemicals, producing products ranging from high-end cameras and lenses, to photographic paper and printing products. In the field of printing, FUJIFILM offers various printing materials, including lithographic plates, especially in the business-to-business sector.

8.    Lithography is a printing method used to print text or images from a plate onto paper or other suitable material. Modern lithographic printing involves the transfer or creation of an image as a patterned polymer coating typically applied to a metal plate.  The plate is then used for commercial printing of newspapers, magazines, or any other printed material, by applying ink to the patterned polymer coating.  Offset printing involves a lithographic process in which the ink is transferred from the plate to the paper by means of an intermediate surface such as a rubber plate or cylinder, rather than by direct contact between the plate and paper. This technique keeps the

paper dry, and allows for high speed, fully automated operation.  Most high-volume printing today—and dating back to the 1960s, for example, for the printing of books and magazines—uses some form of offset lithography from photographically created metal plates.  Industry reports have valued the annual global market for offset lithography printing at over $320 billion in recent years.

9.    FUJIFILM is a long-standing market provider and innovation leader in lithographic printing plates.  Over its history, FUJIFILM has expended significant resources on research, development, and innovation in lithographic printing technologies, resulting in printing operations exhibiting improved operation and performance.  In recent years, FUJIFILM has conducted extensive research and development in the area of "processless" lithographic printing plates, which provide high quality and high speed printing without the need for processing and chemistry that were required in connection with the use of conventional lithographic printing plates.  FUJIFILM has secured multiple patents from the United States Patent and Trademark Office to protect these resulting innovations, including the patents-in-suit, which provide improvements in various aspects of processless lithographic printing plate technologies.

10.    Defendant Kodak has unfairly taken the fruits of FUJIFILM's innovation to use against FUJIFILM in direct competition in the marketplace.  Without authorization, Kodak has made, used, marketed, distributed, imported, offered for sale, and/or sold printing systems which infringe the patents-in-suit, including, without limitation, processless printing plates including those marketed under the product name "SONORA X" and the umbrella name "SONORA XTRA" (collectively "the Accused Products").  *See* Exhibit 5, "KODAK SONORA XTRA Process Free Plates," https://www.kodak.com/en/print/product/offset/plates/sonora-xtra.

11.    Kodak's infringement of the patents-in-suit is and has been willful and deliberate. On information and belief, Defendant has had knowledge of FUJIFILM's patents, including the

3

patents-in-suit, since at least October 10, 2023, because Defendant's subsidiaries, Kodak GmbH, Kodak Graphic Communications GmbH, and Kodak Holding GmbH, were sued for infringing the related European counterparts of the patents-in-suit in the Unified Patent Court (Unified Patent Court Action Ref. Nos. 578607/2023, 578818/2023, 579338/2023), and in the German Patent Court (Court Action Ref. No. 4c O 60/23 before the Regional Court Dusseldorf). The FUJIFILM patents asserted in the UPC and German cases—EP3476616B1, EP3594009B1, EP3511173B1, and EP3511174B1—are related European counterparts of the '346 Patent, '279 Patent, '696 Patent, and '443 Patent, respectively.  On information and belief, at least as of the filing of those infringement actions in Europe, Kodak had knowledge of the related U.S. patents asserted here as well.

12.    Moreover, Defendant has had knowledge of FUJIFILM's patents, including the patents-in-suit, since at least March 31, 2021. During the prosecution of Defendant's U.S. Patent Application No. 16/589240 ("the '240 Application") at the United States Patent and Trademark Office ("USPTO"), the Examiner cited U.S. Patent Publication No. 2019/0232703 (the published application that led to the '443 Patent) as prior art to reject Kodak's then-pending patent claims. *See* Exhibit 6 (Non-Final Office Action dated March 31, 2021). Moreover, during the prosecution of Defendant's U.S. Patent Application No. 17/111,647 ("the '647 Application"), the Examiner cited U.S. Patent Publication No. 2019/0232703 as prior art to reject Kodak's then-pending patent claims. *See* Exhibit 7 (Non-Final Office Action dated October 3, 2023). In addition, in the '240 Application and Defendant's U.S. Patent Application No. 17/097,164, Defendant submitted an Information Disclosure Statement which listed Defendant's PCT application, a copy of which was submitted to the U.S. Patent and Trademark Office and which included an International Search Report citing

EP3594009B1, the European counterpart to the '279 Patent. *See* Exhibit 8 (Information Disclosure Statement dated April 16, 2021); Exhibit 9 (Information Disclosure Statement dated July 2, 2021).

13.    On information and belief, based on Kodak's direct competition with FUJIFILM in the marketplace, and further based on the above, Kodak has had knowledge of FUJIFILM's patents-in-suit, has monitored FUJIFILM's patent filings, and has knowingly and deliberately infringed the patents-in-suit.

## **THE PATENTS-IN-SUIT**

14.    FUJIFILM is the owner of the patents-in-suit with all substantial rights, including the exclusive right to enforce, sue, and recover damages for infringement. The patents-in-suit are described briefly as follows:

### U.S. Patent No. 10,427,443 ("the '443 Patent")

15.    On October 1, 2019, the USPTO duly and legally issued the '443 Patent, entitled "LITHOGRAPHIC PRINTING PLATE PRECURSOR, METHOD OF PREPARING LITHOGRAPHIC PRINTING PLATE, AND LITHOGRAPHIC PRINTING METHOD" after a full and fair examination. The '443 Patent is attached hereto as Exhibit 1.

16.    The '443 Patent relates to a lithographic printing plate precursor, a lithographic printing plate manufacturing method and a printing method. The object of the '443 Patent is, among other things, to provide a lithographic printing plate precursor that suppresses occurrence of appearance failure and to improve scratch resistance and thereby reduce the risk of staining.

17.    On-press development is a method of image exposing a lithographic printing plate precursor, attaching the lithographic printing plate precursor to a printing press without performing a development treatment of the related art thereon, and removing a non-image area of an image recording layer at the initial stage of a typical printing step. For on-press development, because development has not been made at the stage of attaching a lithographic printing plate precursor to a

printing press, it had inter alia been difficult to confirm an image on the lithographic printing plate precursor, and thus the image could not be sufficiently inspected in some cases.

18.    While endeavoring to enhance inspectability for on-press development, the inventors found that unintended coloring (also referred to as "appearance failure") occurs in printing plate precursors comprising an aluminum support with an anodized film and an image recording layer with an acid color former. More specifically, it was found that appearance failure may be caused by a component of the image recording layer, an anion, that may infiltrate into the anodized film, so that part of the aluminum base may be dissolved over time. This is believed to lead to the generation of acid which reacts with the acid color former and thereby causes unintended development of color and thus appearance failure.

19.    The inventors of the '443 Patent discovered that, to prevent such appearance failure, the use of anodized film on the surface of the aluminum support is important because it can suppress dissolution of the aluminum support with the right parameters such as those described and claimed in the '443 Patent. Further, the inventors have found that scratch resistance can also be improved by the design of the anodized film and of the micropores as disclosed and claimed in the '443 patent. In this context, it was found that stains may be generated if the hydrophilicity of the surface of the aluminum support is affected because of scratches. The inventors further discovered that stain resistance can be improved by the claimed design of the anodized film and the micropores.

20.    For example, claim 3 of the '443 Patent recites:

A lithographic printing plate precursor comprising:

an aluminum support; and

an image recording layer on the aluminum support,

6

wherein the aluminum support includes an anodized film on a surface of the image recording layer side,

the anodized film has micropores extending in a depth direction from the surface of the anodized film on the image recording layer side,

the micropores include at least large-diameter pores whose maximum diameter inside the anodized film is in a range of 0.01 um to 0.30 um,

an average pore diameter of the micropores in the surface of the anodized film is 90% or less of the maximum diameter of the micropores inside the anodized film,

a thickness of the anodized film is in a range of 550 nm to 2850 nm, and

the image recording layer contains an acid color former.

21.     As another example, claim 18 of the '443 Patent recites a method of preparing a lithographic printing plate.

### U.S. Patent No. 10,525,696 ("the '696 Patent")

22.     On January 7, 2020, the USPTO duly and legally issued the '696 Patent, entitled "LITHOGRAPHIC PRINTING PLATE PRECURSOR, LITHOGRAPHIC PRINTING PLATE MANUFACTURING METHOD, PRINTING METHOD AND ALUMINUM SUPPORT MANUFACTURING METHOD" after a full and fair examination. The '696 Patent is attached hereto as Exhibit 2.

23.     The '696 Patent relates to a lithographic printing plate precursor, a lithographic printing plate manufacturing method and a printing method. The object of the '696 Patent is, among other things, to provide a lithographic printing plate precursor that enables the resulting lithographic printing plate to have a long tiny dot press life.

24.   For aluminum supports used in lithographic printing plates, it is known that a surface of the aluminum support is grained for the purpose of improving scumming resistance and a press life of the lithographic printing plate. However, the inventors of the '696 Patent discovered that some grained aluminum supports might lead to defects such as chipping and sharpening of the printing plates, resulting in a shortened press life and tiny dot press life.

25.   The inventors found that when the surface of the aluminum support on the image recording layer side has pits with a predetermined depth at a predetermined density, along with other features such as those described and claimed in the '696 Patent, the resulting lithographic printing plate can have a longer tiny dot press life. Embodiments of the invention are described and claimed in the '696 Patent.

26.   For example, claim 14 of the '696 Patent recites:

A lithographic printing plate precursor having an aluminum support and an image recording layer disposed above the aluminum support,

> wherein the aluminum support includes an aluminum plate and an anodized film of aluminum formed on the aluminum plate,
>
> wherein the image recording layer is positioned on the anodized film side of the aluminum support, and
>
> wherein when measured over a 400 μm×400 μm region of a surface of the aluminum support on the image recording layer side using a three-dimensional non-contact roughness tester, pits with a depth from centerline of at least 0.70 μm are present at a density of at least 3,000 pits/mm$^2$,
>
> wherein each of the micropores has a large-diameter portion which extends from the surface of the anodized film to a depth of 10 to 1,000 nm and a small-diameter

portion which communicates with a bottom of the large-diameter portion and extends to a depth of 20 to 2,000 nm from a communication position between the small-diameter portion and the large-diameter portion,

wherein an average diameter of the large-diameter portion at the surface of the anodized film is 15 to 60 nm, and

wherein an average diameter of the small-diameter portion at the communication position is not more than 13 nm.

U.S. Patent No. 10,875,346 ("the '346 Patent")

27.    On December 29, 2020, the USPTO duly and legally issued the '346 Patent, entitled "LITHOGRAPHIC PRINTING PLATE PRECURSOR, LITHOGRAPHIC PRINTING PLATE MANUFACTURING METHOD AND PRINTING METHOD" after a full and fair examination. The '346 Patent is attached hereto as Exhibit 3.

28.    The '346 Patent relates to a lithographic printing plate precursor, a lithographic printing plate manufacturing method and a printing method.

29.    Modern-day lithographic printing plates are highly sophisticated products that must have several characteristics to perform to a customer's satisfaction. These characteristics described in the '346 Patent include, for example, image visibility, press life, avoidance of scumming, and de-inking ability. These characteristics are partially conflicting, because certain properties of the design of the anodized film that are beneficial for some of the characteristics are detrimental for others.

30.    The inventors of the '346 Patent discovered that these characteristics can be optimally balanced with the configuration of a printing plate precursor as described and claimed in the '346 Patent.

31.    For example, claim 1 of the '346 Patent recites:

A lithographic printing plate precursor comprising an aluminum support and an image recording layer,

> wherein the aluminum support includes an aluminum plate and an anodized film of aluminum formed on the aluminum plate,

> wherein the anodized film is positioned closer to the image recording layer than the aluminum plate is,

> wherein the anodized film has micropores extending in a depth direction of the anodized film from a surface of the anodized film on the image recording layer side,

> wherein the micropores have an average diameter of more than 10 nm but not more than 100 nm at the surface of the anodized film,

> wherein the surface of the anodized film on the image recording layer side has a lightness $L*$ of 79 to 100 in a $L*a*b*$ color system,

> wherein each of the micropores has a large-diameter portion which extends from the surface of the anodized film to a depth of 10 to 1000 nm and a small-diameter portion which communicates with a bottom of the large-diameter portion and extends to a depth of 20 to 2,000 nm from a communication position between the small-diameter portion and the large-diameter portion,

> wherein an aperture average diameter of the large-diameter portion at the surface of the anodized film is 15 to 100 nm, and

> wherein an aperture average diameter of the small-diameter portion at the communication position is not more than 13 nm.

32.     As another example, claim 12 of the '346 Patent recites a method of manufacturing a lithographic printing plate.

U.S. Patent No. 11,294,279 ("the '279 Patent")

33.     On April 5, 2022, the USPTO duly and legally issued the '279 Patent, entitled "LITHOGRAPHIC PRINTING PLATE PRECURSOR, AND METHOD FOR PRODUCING LITHOGRAPHIC PRINTING PLATE" after a full and fair examination. The '279 Patent is attached hereto as Exhibit 4.

34.     The '279 Patent discloses and claims a method of producing a lithographic printing plate with a lithographic printing plate precursor comprising an image recording layer on a hydrophilic support.

35.     Unlike conventional methods of producing lithographic printing plates which were plagued by environmental concerns related to waste liquids, or lacked sufficient printing durability and color reproduction capabilities, the '279 Patent relates to on-press development where the development step is carried out on the press, therefore avoiding using chemicals in a separate step.

36.     As part of FUJIFILM's R&D efforts, the inventors of the '279 Patent developed a lithographic printing plate precursor and a method of preparing a printing plate that achieve both excellent printing durability and outstanding color formability, as described and claimed in the '279 Patent.

37.     For example, claim 1 of the '279 Patent recites:

 A method of preparing a lithographic printing plate, comprising

imagewise exposing a lithographic printing plate precursor, thereby forming an exposed

portion and an unexposed portion, and

feeding at least one of printing ink or dampening water, thereby removing the unexposed

portion, wherein

the lithographic printing plate precursor comprises an image recording layer on a

hydrophilic support,

the image recording layer comprises a polymerization initiator, an infrared absorbent, a

polymerizable compound, a polymer particle, and an acid color former,

the infrared absorbent comprises a compound represented by the following Formula 1, and

the difference between the highest occupied molecular orbital (HOMO) of the compound

represented by Formula 1 and the highest occupied molecular orbital of the

polymerization initiator is 0.57 eV or less:

Formula 1



wherein $R_1$ and $R_2$ each independently represents a hydrogen atom or an alkyl group, $R_1$

and $R_2$ are optionally mutually linked to form a ring, $R_3$ to $R_6$ each independently

represents a hydrogen atom or an alkyl group, $R_7$ and $R_8$ each independently represents

an alkyl group or an aryl group, $Y_1$ and $Y_2$ each independently represents an oxygen

atom, a sulfur atom, —$NR_0$— or a dialkylmethylene group, $R_0$ represents a hydrogen

atom, an alkyl group, or an aryl group, $Ar_1$ and $Ar_2$ each independently represents a

group that forms a benzene ring or a naphthalene ring optionally having —X described

below, $A_1$ represents —$NR_9R_{10}$, —$X_1$-$L_1$, or —X described below, $R_9$ and $R_{10}$ each

independently represent an alkyl group, an aryl group, an alkoxycarbonyl group, or an

arylsulfonyl group, $X_1$ represents an oxygen atom or a sulfur atom, $L_1$ represents a

hydrocarbon group, a heteroaryl group, or a group where a bond with $X_1$ is to be cleaved by heat or infrared exposure, Za represents a counter ion that neutralizes charge, and at least one of $Ar_1$ or $Ar_2$ has —X, X represents a halogen atom, —C(=O)—$X_2$—$R_{11}$, —C(=O)—$NR_{12}R_{13}$, —O—C(=O)—$R_{14}$, —CN, —$SO_2NR_{15}R_{16}$, or a perfluoroalkyl group, $X_2$ represents a single bond or an oxygen atom, $R_{11}$ and $R_{14}$ each independently represents an alkyl group or an aryl group, and $R_{12}$, $R_{13}$, $R_{15}$ and $R_{16}$ each independently represents a hydrogen atom, an alkyl group, or an aryl group.

## COUNT I: INFRINGEMENT OF THE '443 PATENT

38.     FUJIFILM realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

39.     On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '443 Patent, including but not limited to claim 3, in violation of 35 U.S.C. § 271(a).

40.     On information and belief, Defendant makes, has made, offers to sell, sells, imports and/or uses the Accused Products.

41.     On information and belief, the Accused Products are lithographic printing plate precursor apparatus as claimed in the '443 Patent.

42.     On information and belief, the Accused Products comprise an aluminum support and an image recording layer on the aluminum support.

43.     On information and belief, the aluminum support of the Accused Products includes an anodized film on a surface of the image recording layer side.

44.     On information and belief, the anodized film of the Accused Products has micropores extending in a depth direction from the surface of the anodized film on the image recording layer side.

45.     On information and belief, the micropores of the Accused Products include at least large-diameter pores whose maximum diameter inside the anodized film is in a range of 0.01 um to 0.30 um.

46.     On information and belief, the average pore diameter of the micropores in the surface of the anodized film of the Accused Products is 90% or less of the maximum diameter of the micropores inside the anodized film.

47.     On information and belief, the thickness of the anodized film of the Accused Products is in a range of 550 nm to 2850 nm.

48.     On information and belief, the image recording layer of the Accused Products contains an acid color former.

49.     Thus, on information and belief, Defendant directly infringes the claimed lithographic printing plate precursor as described in the '443 Patent by making, having made, offering to sell, selling, using, and/or importing the Accused Products. A non-limiting and exemplary claim chart comparing the Accused Products to Claim 3 of the '443 Patent is attached hereto as Exhibit 10.

50.     On information and belief, Defendant possesses knowledge of, and is aware of, the '443 Patent, or became aware of this patent at the time of filing this lawsuit.

51.     On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '443 Patent.

52.     On information and belief, Defendant is liable for inducing infringement of the '443 Patent under 35 U.S.C. § 271(b) by having knowledge of the '443 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '443 Patent, with specific intent, by its customers.

53.     Specifically, Defendant induces infringement of the '443 Patent by, inter alia, training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Defendant's customers. Defendant's customers for the Accused Products directly infringe the '443 Patent by using the Accused Products as instructed by Defendant.

54.     For example, Defendant induces infringement of the '443 Patent under 35 U.S.C § 271(b) because Defendant has knowledge that end users of the Accused Products use Defendant's infringing Accused Products in the United States, and because Defendant encourages such acts resulting in direct patent infringement, by, inter alia, preparing lithographic printing plates and performing lithographic printing, as claimed in the '443 Patent. On information and belief, Defendant provides demonstrations and user manuals or other instruction to Defendant's customers directing customers to infringe.

55.     On information and belief, despite knowing that its actions constitute induced infringement of the '443 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of this Patent, or knowing that there was a high likelihood that its actions resulted in direct infringement by its customers, Defendant nevertheless continues its inducing and infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

56.     Defendant is liable for contributory infringement of the '443 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '443 Patent, which Defendant knows to be especially made and/or especially adapted for use in infringement of the '443 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

57.     Specifically, Defendant contributes to infringement of the '443 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Defendant's customers, and knowingly instructing those customers to use the Accused Products to infringe the '443 Patent. Those customers directly infringe the '443 Patent by using the Accused Products.

58.     By engaging in the conduct described herein, Defendant has injured FUJIFILM and is thus liable for infringement of the '443 Patent, pursuant to 35 U.S.C. § 271.

59.     Defendant has committed these acts of infringement without license or authorization.

60.     As a result of Defendant's infringement of the '443 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

61.     As a result of Defendant's infringement of the '443 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's infringement, together with interests and costs.

62.     Upon information and belief, Defendant has known of the '443 Patent at a date prior to the filing of this Complaint, and has known of the '443 Patent at least upon the filing of this Complaint. Despite such knowledge, Defendant has continued its infringing activities. Upon information and belief, Defendant's infringement of the '443 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

## COUNT II: INFRINGEMENT OF THE '696 PATENT

63.     FUJIFILM realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

64.    On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '696 Patent, including but not limited to claim 14, in violation of 35 U.S.C. § 271(a).

65.    On information and belief, Defendant makes, has made, offers to sell, sells, imports and/or uses the Accused Products.

66.    On information and belief, the Accused Products are lithographic printing plate precursor apparatus as claimed in the '696 Patent.

67.    On information and belief, the Accused Products have an aluminum support and an image recording layer disposed above the aluminum support.

68.    On information and belief, the aluminum support of the Accused Products includes an aluminum plate and an anodized film of aluminum formed on the aluminum plate.

69.    On information and belief, the image recording layer of the Accused Products is positioned on the anodized film side of the aluminum support.

70.    On information and belief, when measured over a 400 μm×400 μm region of a surface of the aluminum support of the Accused Products on the image recording layer side using a three-dimensional non-contact roughness tester, pits with a depth from centerline of at least 0.70 μm are present at a density of at least 3,000 pits/mm$^2$.

71.    On information and belief, each of the micropores of the Accused Products has a large-diameter portion which extends from the surface of the anodized film to a depth of 10 to 1,000 nm and a small-diameter portion which communicates with a bottom of the large-diameter portion and extends to a depth of 20 to 2,000 nm from a communication position between the small-diameter portion and the large-diameter portion.

72.     On information and belief, the average diameter of the large-diameter portion at the surface of the anodized film of the Accused Products is 15 to 60 nm.

73.     On information and belief, the average diameter of the small-diameter portion at the communication position is not more than 13 nm.

74.     Thus, on information and belief, Defendant directly infringes the claimed lithographic printing plate precursor as described in the '696 Patent by making, having made, offering to sell, selling, using and/or importing the Accused Products. A non-limiting and exemplary claim chart comparing Accused Products to Claim 14 of the '696 Patent is attached hereto as Exhibit 11.

75.     On information and belief, Defendant possesses knowledge of, and is aware of, the '696 Patent, or became aware of this patent at the time of filing this lawsuit.

76.     On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '696 Patent.

77.     On information and belief, Defendant is liable for inducing infringement of the '696 Patent under 35 U.S.C. § 271(b) by having knowledge of the '696 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '696 Patent, with specific intent, by its customers.

78.     Specifically, Defendant induces infringement of the '696 Patent by, inter alia, training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Defendant's customers. Defendant's customers for the Accused Products directly infringe the '696 Patent by using the Accused Products as instructed by Defendant.

79.     For example, Defendant induces infringement of the '696 Patent under 35 U.S.C § 271(b) because Defendant has knowledge that end users of the Accused Products use Defendant's infringing Accused Products in the United States, and because Defendant encourages such acts

resulting in direct patent infringement, by, inter alia, preparing lithographic printing plates and performing lithographic printing, as claimed in the '696 Patent. On information and belief, Defendant provides demonstrations and user manuals or other instruction to Defendant's customers directing customers to infringe.

80.    On information and belief, despite knowing that its actions constitute induced infringement of the '696 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of this Patent, or knowing that there was a high likelihood that its actions resulted in direct infringement by its customers, Defendant nevertheless continues its inducing and infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

81.    Defendant is liable for contributory infringement of the '696 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '696 Patent, which Defendant knows to be especially made and/or especially adapted for use in infringement of the '696 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

82.    Specifically, Defendant contributes to infringement of the '696 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Defendant's customers, and knowingly instructing those customers to use the Accused Products to infringe the '696 Patent. Those customers directly infringe the '696 Patent by using the Accused Products.

83.    By engaging in the conduct described herein, Defendant has injured FUJIFILM and is thus liable for infringement of the '696 Patent, pursuant to 35 U.S.C. § 271.

84.    Defendant has committed these acts of infringement without license or authorization.

85.    As a result of Defendant's infringement of the '696 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

86.    As a result of Defendant's infringement of the '696 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's infringement, together with interests and costs.

87.    Upon information and belief, Defendant has known of the '696 Patent at a date prior to the filing of this Complaint, and has known of the '696 Patent at least upon the filing of this Complaint. Despite such knowledge, Defendant has continued its infringing activities. Upon information and belief, Defendant's infringement of the '696 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

## COUNT III: INFRINGEMENT OF THE '346 PATENT

88.    FUJIFILM realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

89.    On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '346 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(a).

90.    On information and belief, Defendant makes, has made, offers to sell, sells, imports and/or uses the Accused Products.

91.    On information and belief, the Accused Products are lithographic printing plate precursor apparatus as claimed in the '346 Patent.

92.     On information and belief, the Accused Products comprise an aluminum support and an image recording layer.

93.     On information and belief, the aluminum support of the Accused Products includes an aluminum plate and an anodized film of aluminum formed on the aluminum plate.

94.     On information and belief, the anodized film of the Accused Products is positioned closer to the image recording layer than the aluminum plate is.

95.     On information and belief, the anodized film of the Accused Products has micropores extending in a depth direction from a surface of the anodized film on the image recording layer side.

96.     On information and belief, the micropores of the Accused Products have an average diameter of more than 10 nm but not more than 100 nm at the surface of the anodized film.

97.     On information and belief, the surface of the anodized film of the Accused Products on the image recording layer side has a lightness L* of 79 to 100 in a L*a*b* color system.

98.     On information and belief, each of the micropores of the Accused Products has a large-diameter portion which extends from the surface of the anodized film to a depth of 10 to 1000 nm and a small-diameter portion which communicates with a bottom of the large-diameter portion and extends to a depth of 20 to 2,000 nm from a communication position between the small-diameter portion and the large-diameter portion.

99.     On information and belief, the aperture average diameter of the large-diameter portion at the surface of the anodized film of the Accused Products is 15 to 100 nm.

100.     On information and belief, the aperture average diameter of the small-diameter portion at the communication position is not more than 13 nm.

101.    Thus, on information and belief, Defendant directly infringes the claimed lithographic printing plate precursor as described in the '346 Patent by making, having made, offering to sell, selling, using and/or importing the Accused Products. A non-limiting and exemplary claim chart comparing Accused Products to Claim 1 of the '346 Patent is attached hereto as Exhibit 12.

102.    On information and belief, Defendant possesses knowledge of, and is aware of, the '346 Patent, or became aware of this patent at the time of filing this lawsuit.

103.    On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '346 Patent.

104.    On information and belief, Defendant is liable for inducing infringement of the '346 Patent under 35 U.S.C. § 271(b) by having knowledge of the '346 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '346 Patent, with specific intent, by its customers.

105.    Specifically, Defendant induces infringement of the '346 Patent by, inter alia, training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Defendant's customers. Defendant's customers for the Accused Products directly infringe the '346 Patent by using the Accused Products as instructed by Defendant.

106.    For example, Defendant induces infringement of the '346 Patent under 35 U.S.C § 271(b) because Defendant has knowledge that end users of the Accused Products use Defendant's infringing Accused Products in the United States, and because Defendant encourages such acts resulting in direct patent infringement, by, inter alia, preparing lithographic printing plates and performing lithographic printing, as claimed in the '346 Patent. On information and belief, Defendant provides demonstrations and user manuals or other instruction to Defendant's customers directing customers to infringe.

107.    On information and belief, despite knowing that its actions constitute induced infringement of the '346 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of this Patent, or knowing that there was a high likelihood that its actions resulted in direct infringement by its customers, Defendant nevertheless continues its inducing and infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

108.    Defendant is liable for contributory infringement of the '346 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '346 Patent, which Defendant knows to be especially made and/or especially adapted for use in infringement of the '346 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

109.    Specifically, Defendant contributes to infringement of the '346 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Defendant's customers, and knowingly instructing those customers to use the Accused Products to infringe the '346 Patent. Those customers directly infringe the '346 Patent by using the Accused Products.

110.    By engaging in the conduct described herein, Defendant has injured FUJIFILM and is thus liable for infringement of the '346 Patent, pursuant to 35 U.S.C. § 271.

111.    Defendant has committed these acts of infringement without license or authorization.

112.    As a result of Defendant's infringement of the '346 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

113.    As a result of Defendant's infringement of the '346 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's infringement, together with interests and costs.

114.    Upon information and belief, Defendant has known of the '346 Patent at a date prior to the filing of this Complaint, and has known of the '346 Patent at least upon the filing of this Complaint. Despite such knowledge, Defendant has continued its infringing activities. Upon information and belief, Defendant's infringement of the '346 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

## COUNT IV: INFRINGEMENT OF THE '279 PATENT

115.    FUJIFILM realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

116.    On information and belief, Defendant directly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '279 Patent, including but not limited to claim 1, in violation of 35 U.S.C. § 271(a).

117.    On information and belief, Defendant makes, has made, offers to sell, sells, imports and/or uses the Accused Products.

118.    On information and belief, the Accused Products are lithographic printing plates are designed to be prepared according to the methods claimed in the '279 Patent. For example, use of the Accused Products requires exposing the lithographic printing plate to form an exposed portion and unexposed portion and feeding at least one of printing ink or dampening water to remove the unexposed portion.

119.    On information and belief, the Accused Products comprise at least an image recording layer on a hydrophilic support, as described in and claimed by the '279 Patent.

120.    On information and belief, the image recording layer in the Accused Products comprise a polymerization initiator as described in and claimed by the '279 Patent.

121.    On information and belief, the image recording layer in the Accused Products comprise an infrared absorbent as described in and claimed by the '279 Patent.

122.    On information and belief, the image recording layer in the Accused Products comprise a polymerizable compound as described in and claimed by the '279 Patent.

123.    On information and belief, the image recording layer in the Accused Products comprise a polymer particle as described in and claimed by the '279 Patent.

124.    On information and belief, the image recording layer in the Accused Products comprise an acid color former as described in and claimed by the '279 Patent.

125.    Thus, on information and belief, Defendant directly infringes the claimed method for preparing a lithographic printing plate as described in the '279 Patent by making, having made, offering to sell, selling and/or using the Accused Products. A non-limiting and exemplary claim chart comparing Accused Products to Claim 1 of the '279 Patent is attached hereto as Exhibit 13.

126.    On information and belief, Defendant possesses knowledge of, and is aware of, the '279 Patent, or became aware of this patent at the time of filing this lawsuit.

127.    On information and belief, Defendant indirectly infringes, literally and/or under the doctrine of equivalents, one or more claims of the '279 Patent.

128.    On information and belief, Defendant is liable for inducing infringement of the '279 Patent under 35 U.S.C. § 271(b) by having knowledge of the '279 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '279 Patent, with specific intent, by its customers.

129.    Specifically, Defendant induces infringement of the '279 Patent by, inter alia, training its customers on the use of the Accused Products and/or promotion and/or sales of the Accused Products to Defendant's customers. Defendant's customers for the Accused Products directly infringe the '279 Patent by using the Accused Products as instructed by Defendant.

130.    For example, Defendant induces infringement of the '279 Patent under 35 U.S.C § 271(b) because Defendant has knowledge that end users of the Accused Products use Defendant's infringing Accused Products in the United States, and because Defendant encourages such acts resulting in direct patent infringement, by, inter alia, exposing the lithographic printing plate to form an exposed portion and unexposed portion and feeding at least one of printing ink or dampening water to remove the unexposed portion, as claimed in the '279 Patent. On information and belief, Defendant provides demonstrations and user manuals or other instruction to Defendant's customers directing customers to infringe.

131.    On information and belief, despite knowing that its actions constitute induced infringement of the '279 Patent and/or despite knowing that there was a high likelihood that its actions constitute induced infringement of this Patent, or knowing that there was a high likelihood that its actions resulted in direct infringement by its customers, Defendant nevertheless continues its inducing and infringing actions, and continues to make, use, sell, and/or offer for sale the Accused Products.

132.    Defendant is liable for contributory infringement of the '279 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale the Accused Products within the United States because the Accused Products constitute a material part of the invention embodied in the '279 Patent, which Defendant knows to be especially made and/or

especially adapted for use in infringement of the '279 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

133.     Specifically, Defendant contributes to infringement of the '279 Patent by, inter alia, promotion, and/or sales of the infringing Accused Products to Defendant's customers, and knowingly instructing those customers to use the Accused Products to infringe the '279 Patent. Those customers directly infringe the '279 Patent by using the Accused Products.

134.     By engaging in the conduct described herein, Defendant has injured FUJIFILM and is thus liable for infringement of the '279 Patent, pursuant to 35 U.S.C. § 271.

135.     Defendant has committed these acts of infringement without license or authorization.

136.     As a result of Defendant's infringement of the '279 Patent, Plaintiff has been, and will continue to be, damaged and will suffer irreparable injury unless the infringement is enjoined by this Court pursuant to 35 U.S.C. § 283 and/or the equitable powers of this Court.

137.     As a result of Defendant's infringement of the '279 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's infringement, together with interests and costs.

138.     Upon information and belief, Defendant has known of the '279 Patent at a date prior to the filing of this Complaint, and has known of the '279 Patent at least upon the filing of this Complaint. Despite such knowledge, Defendant has continued its infringing activities. Upon information and belief, Defendant's infringement of the '279 Patent is willful, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284. This action is therefore exceptional within the meaning of 35 U.S.C. § 285, entitling Plaintiff to its attorneys' fees and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff FUJIFILM respectfully requests the following relief:

A.      A Judgment declaring that the patents-in-suit are valid and enforceable;

B.      A Judgment pursuant to 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c), declaring that the commercial manufacture, use, offering to sell, or sale within the United States, and/or importation into the United States of the Accused Products before the expiration of the patents-in-suit (including any regulatory extensions) would directly and/or indirectly infringe the patents-in-suit;

C.      Entry of a preliminary and/or permanent injunction against Defendant and its officers, agents, servants, employees, and attorneys, and any person in active concert or participation or privity with Defendant, from engaging in the commercial manufacture, use, offering to sell, or sale within the United States, and/or importation in the United States of the Accused Products until the expiration of the patents-in-suit (including any regulatory extensions);

D.      A Judgment, pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, awarding FUJIFILM damages or other monetary relief if Defendant commercially manufactures, uses, offers to sell, or sells within the United States, and/or imports into the United States any Accused Products that infringes the patents-in-suit;

E.      A Judgment, pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, declaring that Defendant's infringement of the patents-in-suit is willful and awarding FUJIFILM enhanced damages if Defendant commercially manufactures, uses, offers to sell, or sells within the United States, and/or imports into the United States any Accused Products that infringes the patents-in-suit (including any regulatory extensions);

F.      A Judgment, pursuant to 35 U.S.C. § 285, declaring that this is an exceptional case and awarding FUJIFILM its costs, expenses, and reasonable attorneys' fees incurred in this action; and

G.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), FUJIFILM demands a trial by jury on all issues and claims so triable.

DATED: March 20, 2024                    **BAKER BOTTS L.L.P.**

By: */s/ Richard B. Harper*

Richard B. Harper (NJ Bar No. 85839)
richard.harper@bakerbotts.com
Robert L. Maier (*pro hac vice pending*)
robert.maier@bakerbotts.com
Jennifer C. Tempesta (*pro hac vice pending*)
jennifer.tempesta@bakerbotts.com
Frank Zhu (*pro hac vice pending*)
frank.zhu@bakerbotts.com
Stephanie C. Kato (*pro hac vice pending*)
stephanie.kato@bakerbotts.com
Boyang Zhang (*pro hac vice pending*)
boyang.zhang@bakerbotts.com
Lu Yan (*pro hac vice pending*)
sophie.yan@bakerbotts.com
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
Tel: (212) 408-2500

Megan LaDriere White (*pro hac vice pending*)
megan.white@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue Suite 900
Dallas, TX 75201-2980
Tel: (214) 953-6500

*Attorneys for Plaintiff FUJIFILM Corporation*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2</u>

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.


DATED: March 20, 2024                    By: *<u>/s/ Richard B. Harper</u>*